Gerald R. **CARLTON** and Priscilla Carlton, Individually and as Co–Administrators of the Estate of Brian Carlton, Plaintiffs,

v.

**WORCESTER INSURANCE COMPANY, Defendant.**

Civ. A. No. 89–303 L.

United States District Court, D. Rhode Island.

Aug. 9, 1990.

Thomas Pearlman, Providence, R.I., for plaintiffs.

Dennis S. Baluch, Baluch, Mahoney & Gianfrancesco, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motion of defendant, Worcester Insurance Company (Worcester), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Worcester claims that the exclusions contained in the medical payments provision and the uninsured motorist clause of the plaintiffs' insurance policy preclude plaintiffs' recovery for the expenses incident to their son's death. Worcester argues that based on *Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005 (1978), this Court must give effect to the policy exclusions and determine as a matter of law that plaintiffs are not entitled to collect on their policy. Plaintiffs cite *Sentry Insurance Co. v. Castillo*, 574 A.2d 138 (R.I.1990), as authority for the proposition that the Rhode Island Supreme Court would now conclude that an exclusion which denied underinsured motorist coverage for an accident which occurred on a public road between an underinsured motorist and an uninsurable dirt bike is void as a matter of public policy.

## BACKGROUND

On or about June 26, 1986, Brian Carlton, the son of the plaintiffs, Gerald and Priscilla Carlton, struck an automobile while operating a dirt bike on Providence Pike in North Smithfield, Rhode Island. Brian died in August as a result of the accident. The operator of the automobile, George Palshan, maintained an insurance policy through Allstate Insurance Company. Although the police report indicates that all of the witnesses to the accident believe that Brian was driving at speeds in excess of

fifty miles an hour, Palshan's insurance company paid the Carltons $50,000.00, the full limit of his policy.

At the time of the accident, Gerald and Priscilla had automobile liability coverage in effect through Worcester. The policy listed a 1973 Plymouth two-door and a 1977 Ford wagon as the covered automobiles. The policy insured Gerald and Priscilla and "family members". The policy defined "family member" as "a person related to you by blood ... who is a resident of your household." In addition to liability coverage, the policy also provided for medical payments and uninsured motorist protection. The medical payments coverage was as follows:

> We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:
> 1. Caused by accident; and
> 2. Sustained by a covered person.
>
> \*     \*     \*     \*     \*     \*
>
> 'Covered person' as used in this Part means:
> 1. You or any family member
>    a. while occupying; or
>    b. as a pedestrian struck by;
>    a motor vehicle designed for use mainly on public roads.

The provision excluded coverage for bodily injuries "sustained while occupying any motorized vehicle having less than four wheels." It also excluded payments for injuries "sustained while occupying or, when struck by, any vehicle (other than your covered auto) which is owned by any family member." This provision limited liability to $2,000.00 for each person.

The uninsured motorists provision assured "We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." This provision excluded coverage for any "bodily injur[ies] sustained by any person: [w]hile occupying ... any motor vehicle owned by you or any family member which is not insured for this coverage under this policy." The policy limited liability to $50,000.00 for each accident.

The policy also contained a separate endorsement entitled "Uninsured/Underinsured Motorists Coverage Exclusion Endorsement." The addition provided "[t]he following exclusion is added to Uninsured Motorists Coverage and, where afforded, Underinsured Motorists Coverage." The endorsement excluded coverage for punitive or exemplary damages.

At the time of the accident, Brian Carlton lived at home with his parents and siblings. A few months prior to the accident, Brian purchased a Kawasaki motor bike from a friend. He never registered the bike and never obtained insurance for the bike. Brian's father described the bike in his deposition as "what they call an off road vehicle" that has no muffler. He also described the bike as having "knobby" tires, i.e., "big round knobs that dig into dirt and sand." (Gerald Carlton depo. p. 13).

This is a diversity jurisdiction case. Gerald and Priscilla filed this suit, individually and as co-administrators of Brian's estate, seeking a declaration that Worcester is liable under the medical payments provision and the underinsured motorists coverage of their policy. Plaintiffs, as Brian's beneficiaries under the wrongful death statute, seek damages for the economic loss due to Brian's death in the amount of $442,498.00. They also seek, for the estate, an estimated $100,000.00 in medical and hospital expenses. Worcester argues that it is entitled to summary judgment, because the plain language of the exclusions within the insurance policy bars any recovery by plaintiffs. Plaintiffs, however, attempt to differentiate between the underinsured motorists provision of their policy and the uninsured motorists provision, claiming that the latter's exclusions do not apply to this case. Plaintiffs, in the alternative, claim that the uninsured motorist exclusion is void in light of the uninsured motorist statute, R.I.Gen.Laws § 27-7-2.1. Having heard oral arguments on the motion, the Court took the matter under advisement. It is now in order for decision.

## DISCUSSION

### I. Summary Judgment Standard

Defendant's motion for summary judgment requires this Court to apply a well established Rule 56 standard. This Court has articulated in the past:

It is well settled that summary judgment can be granted only where there is no genuine issue as to any material fact and where the movant is entitled to judgment as a matter of law. In determining whether these conditions have been met, the Court must view the record in the light most favorable to the party opposing the motion, indulging all inferences favorable to that party.

*Gonsalves v. Alpine Country Club*, 563 F.Supp. 1283, 1285 (D.R.I.1983), *aff'd*, 727 F.2d 27, 29 (1st Cir.1984) (citations omitted).

### II. Applicable Law

■ Since this is a diversity jurisdiction case, this Court must look to the law of Rhode Island to settle this dispute. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Gleason v. Merchants Mut. Ins. Co.*, 589 F.Supp. 1474, 1478 (D.R.I.1984). Rhode Island courts have applied general rules of contract construction to insurance contract disputes. *See Malo v. Aetna Casualty & Sur. Co.*, 459 A.2d 954, 956 (R.I.1983). The law is that courts must enforce the plain and unambiguous contract terms as the parties have written them. *Id.* Courts, however, must construe any ambiguities against the insurer. *Gleason, supra*, 589 F.Supp. at 1480. When reviewing uninsured motorist provisions, however, courts also must ascertain whether the contract language conflicts with the statutory mandates and public policies established in Rhode Island's Uninsured Motorist Statute. *Id.* at 1482; *see also Castillo, supra*, 574 A.2d at 140. When conflicts do exist, of course, the statute prevails. *Gleason, supra*, 589 F.Supp. at 1482.

### A. Medical Payments Coverage

■ This Court agrees with Worcester that the clear language of the medical payments coverage provision of the policy bars plaintiffs' recovery for Brian's medical expenses. Not only does that provision require that the covered person at the time of the injury be occupying a "motor vehicle designed for use mainly on public roads," it also excludes injuries arising while operating or occupying a "motorized vehicle having less than four wheels." It further excludes coverage for injuries arising while occupying a vehicle owned by a family member. The undisputed deposition testimony of Brian's father, Gerald, indicates that Brian had purchased the dirt bike he was riding at the time of the accident with his own money. He also testified that Brian's dirt bike constituted an "off road vehicle" with only two wheels. Both parties agree that Brian was injured while operating his dirt bike. Even if it could be argued that the dirt bike was, in fact, a "motor vehicle designed for use mainly on public roads," *Cf. Castillo, supra*, 574 A.2d at 139–40, plaintiffs cannot overcome the totally unambiguous requirement that the injuries must occur while occupying a four wheeled vehicle which was not owned by a family member.

No court in Rhode Island has found that exclusions in medical payment coverage provisions violate the public policy of the statute. Therefore, this Court must apply the plain and ordinary language of the insurance policy. The policy clearly prevents plaintiffs from recovering medical payments in this case.

### B. Uninsured Motorists Coverage

■ Although plaintiffs initially attempt to distinguish their uninsured from their underinsured motorists coverage as a means of separating the uninsured motorists exclusions from the present case, their argument fails when the insurance policy is viewed in conjunction with the statute. Although the uninsured motorists provision in plaintiffs' contract makes no reference to underinsured motorists coverage, it appears clear from the policy endorsement that the policy grouped the two categories together. *Cf. Sentry Ins. Co. v. Grenga*, 556 A.2d 998, 999–1000 (R.I.1989). Even if

the policy intended to provide underinsured motorists coverage separate and apart from uninsured motorists protection, the statutory definition of uninsured motorists includes underinsured motorists. *See Van-Marter v. Royal Indem. Co.*, 556 A.2d 41, 42, 44 (R.I.1989); R.I.Gen.Laws § 27–7–2.1(B)(1) (1985).[1] Since the uninsured motorists provisions must conform to the legislative mandates established by the General Assembly, the Carltons' policy must be viewed as defining uninsured motorists coextensively with the parameters of the statute. *See VanMarter, supra,* 556 A.2d at 44; *see also Gleason, supra,* 589 F.Supp. at 1482. Therefore, the exclusions applicable to uninsured motorists coverage also apply here where George Palshan's insurance insufficiently covered the claimed injuries.

Absent plaintiffs' contention that the "owned but not insured" exclusion violates the uninsured motorist statute's public policy, this Court would apply the plain language of the policy and deny the Carlton's coverage. As discussed previously, the parties do not dispute the relevant facts. As a son residing at home, Brian fell within the definition of a "family member." Brian's father's deposition testimony reveals that Brian purchased the dirt bike prior to the accident with his own funds. Brian was riding on and operating his unregistered Kawasaki dirt bike at the time he sustained the injuries which eventually led to his youthful demise. The parties, likewise, agree that the insurance policy under which the plaintiffs seek to recover did not insure Brian's dirt bike. These uncontested facts fall squarely within the "owned but not insured" exclusion contained in the plaintiffs' policy. Therefore, unless this Court determines, as a matter of law, that the exclusion violates public policy, plaintiffs are not entitled to recover in this case.

The uninsured motorist statute requires that insurance carriers offer their insureds uninsured motorist coverage. The statute provides in pertinent part:

No policy insuring against loss resulting from liability imposed by law for ... bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death in limits set forth in each policy but in no instance less than the limit set forth in § 31–31–7 as amended, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury ... including death.

R.I.Gen.Laws § 27–7–2.1(A)(1). The statute requires a minimum of $25,000.00 for the bodily injury or for the death of one person. R.I.Gen.Laws § 31–31–7 (1982).

■ An uninsured motorist provision must comport with the public policy mandates intended by the General Assembly. *DiTata v. Aetna Casualty & Sur. Co.*, 542 A.2d 245, 247–48 (R.I.1988). In *Aldcroft v. Fidelity & Casualty Co.*, 106 R.I. 311, 318–19, 259 A.2d 408, 413–14 (1969), the Rhode Island Supreme Court noted that "the legislature intended to give an insured motorist operating on the public ways protection against the economic loss that might result from the negligent operation of uninsured motor vehicles."[2] The Court found that an insurance provision which reduced the statutory minimum required for uninsured motorist protection by amounts received for workers' compensa-

---

1. R.I.Gen.Laws § 27–7–2.1(B)(1) provides:
   'Uninsured motorist' shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits or damages that persons insured pursuant to this section are legally entitled to recover because

of bodily injury, sickness, or disease, including death resulting therefrom.

2. It is by no means clear from this record that Palshan's negligence caused the accident. However, for purposes of this motion, the Court must presume that Palshan's negligence did, in fact, cause the accident.

tion and medical expenses violated the public policy of the uninsured motorist statute. *Id.* at 319–20, 259 A.2d at 414.

■ The Rhode Island cases interpreting the uninsured motorist statute generally fall into two categories: 1) those that examine "owned but not insured" exclusions which apply to the vehicle *occupied by the insured* at the time of the accident and 2) those that consider "off road" exclusions which refer to the vehicle *operated by the uninsured motorist* at the time of the accident. The Rhode Island Supreme Court has consistently upheld the former, *See Baker, supra,* 119 R.I. at 741, 383 A.2d at 1008–09; *see also Malo, supra,* 459 A.2d at 956–57, and, more recently, invalidated the latter exclusions. *Castillo, supra,* 574 A.2d at 140. As the law presently stands, public policy allows insurance companies to exclude coverage when the vehicle occupied by the insured at the time of the accident is not a vehicle insured by the policy. *Baker, supra,* 119 R.I. at 741, 383 A.2d at 1008–09. Insurance companies, however, may not deny coverage for injuries caused by any vehicle statutorily defined as a "motor vehicle." *Castillo, supra,* 574 A.2d at 140. *Baker* still represents good law in Rhode Island. This Court believes, after a thorough review of the Rhode Island cases, that a majority of the Rhode Island Supreme Court would continue to follow *Baker* and, therefore, deny the Carlton's coverage under their policy in this situation.

In *Baker,* the insurance company refused to pay for injuries received by the insured while the insured was operating a motorcycle owned by her but not insured under the relevant policy. *Baker, supra,* 119 R.I. at 738, 383 A.2d at 1007. The uninsured motorist provision excluded coverage for "bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named insured or by any person resident in the same household." *Id.* at 736, 383 A.2d at 1006. Although a majority of other jurisdictions had found that such an exclusion violated uninsured motorist statutes, the Rhode Island Supreme Court determined that the exclusion did not violate the public

policy expressed in Rhode Island General Laws § 27–7–2.1. *Id.* at 740–41, 383 A.2d at 1008. That Court opined that "the uninsured motorist legislation was never intended to force insurance companies to provide uninsured motorist coverage to all vehicles owned by the insured as long as one vehicle was properly covered by the initial policy." *Id.* The Supreme Court stated that uninsured motorist protection follows the vehicles insured within the policy; it does not follow the insured. *Id.* at 741, 383 A.2d at 1008. The Court also stressed that the insured had chosen not to insure the motorcycle. *Id.* Believing that plaintiff's failure to insure the motorcycle constituted a "unilateral attempt to modify the existing contract," the Court refused to extend the uninsured motorist coverage to the uninsured motorcycle. *Id.* at 741, 383 A.2d at 1009.

Although it would appear that *Baker* resolves the present issue by validating an exclusion substantially similar to the present exclusion, the matter requires further analysis because only one of the five justices who decided *Baker* remains on the Rhode Island Supreme Court today and he dissented in that case. *Id.* at 745, 383 A.2d at 1011. Mr. Justice Kelleher responded to the majority in *Baker* by stating:

Our uninsured motorist statute contains no requirement that the insured have any relationship at the time of the mishap with any vehicle he owns or with one that is insured by his insurer. The statute simply states that the insurer must pay once the insured has demonstrated that he has sustained personal injuries which were caused by the negligent operation of a so-called uninsured motor vehicle. This court has said that the Legislature, in enacting this statute, was concerned that a purchaser of an automobile liability policy be given the opportunity to purchase insurance coverage for economic loss resulting from bodily injuries in those instances where both the owner and operator of the responsible vehicle are uninsured. *Aldcroft v. Fidelity & Casualty Co.,* 106 R.I. 311, 259 A.2d 408 (1969). The insured's status at the time of the injury as passenger, pedestrian, or

driver of an insured or uninsured vehicle is totally irrelevant so far as his ability to recover under the statutorily mandated coverage is concerned. The statute in no way relates coverage to the occupancy of a particular automobile.

*Id.* at 746, 383 A.2d at 1011. From this statement, it would appear that Justice Kelleher would rule against the exclusion and allow the Carltons to recover under the policy.

Since *Baker*, however, the Supreme Court, with Justice Kelleher joining the majority, has upheld similar exclusions. *See Malo, supra*, 459 A.2d at 956–57; *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 315, 316 (R.I.1980) (Kelleher, J.). When the Court decided *Malo*, all but one of the present Supreme Court justices were present on the bench. In *Malo*, the Court upheld a provision which denied uninsured motorist coverage when the injured relative of the insured owned an uninsured automobile. *Id.* at 957. Finding nothing in the uninsured motorist statute directing who must be covered, the Court held that such an exclusion did not contravene the public policy behind the uninsured motorist statute. *Id.* at 956–57. Although the particular provision in *Malo* appeared in the definition of those covered by the policy, rather than as a specific exclusion, the effect was to bar an insured's daughter, injured while riding as a passenger in another automobile, from recovery merely because the daughter owned, but had not insured, her own automobile. *Id.* at 955, 957. These facts almost mirror the present case. *Malo* stands as a reaffirmance of *Baker* and provides strong support for restrictions which deny coverage when the injured party owns a motor vehicle not insured by the pertinent policy.

If Brian Carlton, at the time of this accident, had been operating a motorcycle or an automobile owned by him but not insured under his parents' policy, the ruling in *Baker* would clearly bind this Court and prevent recovery. The only distinguishing feature between *Baker* and this case is that the present case involves an uninsurable vehicle. This Court must now decide whether the Rhode Island Supreme Court would retreat from *Baker* on this basis.

Although cited by plaintiffs as authority, the second line of Rhode Island Supreme Court cases have no bearing on the present case. Plaintiffs rely on *Sentry Insurance Co. v. Castillo*. Unlike the present case, the *Castillo* case involved a distinct exclusion which required that the uninsured motor vehicle which caused the injuries (as opposed to the vehicle occupied by the insured) fall within the definition of "a land motor vehicle designed for use on public roads." *Castillo, supra*, 574 A.2d 139. The *Castillo* court stretched ordinary language to its limits and determined that an exclusion which would bar coverage for injuries sustained by a pedestrian when struck by a snowmobile on a school field violated the Rhode Island Uninsured Motorist Statute. *Id.* at 140.

The court differentiated *Lally v. Automobile Mutual Insurance Co. of America*, 114 R.I. 582, 584–85, 337 A.2d 243, 245 (1975), which had upheld an insurance provision which denied coverage to a pedestrian who was struck by a go cart operated on a public sidewalk. The *Lally* court upheld the exclusion because the injuries occurred off a public road as the result of the negligent operation of a vehicle not designed for travel on public roads. *Id.* at 585, 337 A.2d at 245. *Castillo* noted that, as opposed to a go cart, a snowmobile could travel on public roads under certain circumstances. *Castillo, supra*, 574 A.2d at 140. The Supreme Court seemed to determine that since the possibility of travel on a public road existed for the snowmobile, the snowmobile was necessarily "designed for use on public roads." *Id.* Justice Shea's lone dissent was grounded in *Lally*. He would have denied coverage because the snowmobile accident had occurred off the public roadways. *Id.* at 142–43.

The *Castillo* court also determined that the insurance policy violated the public policy of the uninsured motorist statute by excluding coverage for injuries caused by a snowmobile. *Id.* at 140. The Court stressed that the uninsured motorist statute discussed "motor vehicles" and that a snowmobile, by statutory definition, is a motor vehicle. *Id.* at 141; *see also*, R.I. Gen.Laws § 31–3.2–1(3) (1982). The Court

concluded that since the uninsured motorist statute referred to "motor vehicles," rather than to "automobiles," the General Assembly intended to provide protection for *any* injuries caused by *any* motor vehicle, including snowmobiles. *Id.* (emphasis added). Interestingly, while describing how the General Assembly intended to include snowmobiles under the uninsured motorist statute, the Court cited to a New Jersey case which found that the statute providing for mandatory uninsured motorist coverage did not embrace injuries sustained while operating a motorbike. *Id.*

Although the same statute defines dirt bikes as motor vehicles, *See* R.I.Gen.Laws § 31–3.2–1(4), the uninsured motorist statute's reference to motor vehicles applies to the uninsured motorist's vehicle, not to the insured's vehicle. The statute does not mention the insured's vehicle. Such silence permits insurance companies to limit coverage to the parties and the vehicles specifically enumerated in the policies. *Baker, supra,* 119 R.I. at 741, 383 A.2d at 1008; *Malo, supra,* 459 A.2d at 956–57. Despite the fact that a dirt bike, like a snowmobile, is an uninsurable vehicle, this Court cannot conclude that the Rhode Island Supreme Court would now overrule *Baker* and *Malo.* In this case, Brian (not the underinsured motorist) was operating a dirt bike, designed for operation on dirt rather than pavement, at high speeds on a public road. It is not reasonable to suppose that the Supreme Court would allow recovery in this case and, thus, make the uninsured motorist coverage virtually limitless. As stated in *Baker,* the General Assembly did not intend to extend coverage to *all* vehicles owned by the insured. *See Baker, supra,* 119 R.I. at 740–41, 383 A.2d at 1008.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment hereby is granted. The Clerk will enter judgment for defendant forthwith.

*It is so Ordered.*