Gerald R. CARLTON, etc., et al.,
Plaintiffs, Appellants,

v.

WORCESTER INSURANCE COMPANY,
Defendant, Appellee.

No. 90–1816.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1990.

Decided Jan. 8, 1991.

Z. Hershel Smith, with whom DiSandro–Smith & Associates, P.C., Inc., Providence, R.I., was on brief, for plaintiffs, appellants.

Peter F. Mathieu, with whom Dennis S. Baluch and Baluch, Mahoney & Gianfrancesco, Providence, R.I., were on brief, for defendant, appellee.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
CYR, Circuit Judge.

SELYA, Circuit Judge.

This appeal follows on the heels of a summary judgment favoring defendant-appellee Worcester Insurance Company (Worcester). *Carlton v. Worcester Ins. Co.*, 744 F.Supp. 395 (D.R.I.1990). Summary judgment is, of course, permissible only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In that context, the court below was obliged to view the entire record in the light most hospitable to the parties opposing summary judgment (here, the plaintiffs-appellants), indulging all reasonable inferences in their favor. *See Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Having ourselves assessed the record in the same spirit of generosity, we

are satisfied that the material facts are as follows.

Worcester issued an automobile liability insurance policy to Gerald Carlton and Priscilla Carlton, husband and wife. The policy was issued subject to the laws of Rhode Island. During the policy period, the Carltons' son, Brian, was fatally injured while operating an unregistered, uninsured dirt bike. Brian's death stemmed from a collision between the dirt bike (which he owned) and an automobile operated by George Palshan.

Palshan's car was modestly insured. When the Carltons (individually and as co-administrators of Brian's estate) sought damages, Palshan's carrier paid its full policy limit ($50,000). Claiming that this amount was an inadequate reflection of the value of their claim, the Carltons invoked diversity jurisdiction, 28 U.S.C. § 1332(a), and sued Worcester in the United States District Court for the District of Rhode Island. The gravamen of plaintiffs' complaint was that Brian, as a family member resident in their household, was covered under Worcester's policy and was therefore entitled to both "underinsured motorist" benefits and medical payments.[1]

■ In due course, Worcester sought summary judgment. It alluded specifically to a policy exclusion denying uninsured/underinsured motorist coverage for injuries sustained while using or occupying a motor vehicle "owned by ... any family member which is not insured [under Worcester's policy]."[2] After considering the facts limned above, the district court wrote an incisive, well-reasoned opinion. It granted Worcester's motion, explaining in meticulous detail why *brevis* disposition

was appropriate. To summarize, the court found the exclusions in the insurance policy (1) clear and unambiguous, (2) valid under the holding of the Rhode Island Supreme Court in *Employers' Fire Ins. Co. v. Baker*, 383 A.2d 1005 (R.I.1978), and (3) applicable in the circumstances of plaintiffs' case. *See Carlton*, 744 F.Supp. at 398–402. Reluctant to repastinate soil already well tilled, we affirm the judgment below substantially on the basis of Judge Lagueux's opinion, adding only a few observations.

We agree entirely with the lower court that *Baker*, 383 A.2d 1005, controls this case.[3] And although we are dubious about the wisdom of the district court's nose-counting approach to *stare decisis*, *Carlton*, 744 F.Supp. at 400–01, we share the court's conviction, *id.* at 400, that the more recent Rhode Island cases have not drained *Baker* of its vitality. To the contrary, decisions such as *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550 (R.I.1990), and *Malo v. Aetna Cas. & Sur. Co.*, 459 A.2d 954 (R.I.1983), seem to us to reaffirm *Baker*'s underlying rationale.

■ Plaintiffs' appellate counsel, new to the case, took the position at oral argument that *Baker*, if still good law, was nonetheless distinguishable. The distinction comes about, he says, because unlike Ms. Baker's motorcycle, Brian Carlton's dirt bike was not only uninsured but uninsurable. The thesis deserves high marks for rumgumption, but a failing grade on the merits. For one thing, we have searched the record in vain to find any factual support for the claim that the dirt bike was uninsurable. With respect, we cannot merely take counsel's word for it in the summary judgment milieu. *See, e.g., Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50

---

1. The phrase "underinsured motorist" has a specific meaning under Rhode Island law. *See* R.I. Gen. Laws § 27–7–2.1(B)(1) (1989); *see also Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 553 n. 4 (R.I.1990) (tracing history of definition). It is undisputed for purposes of this appeal that Palshan qualified as an underinsured motorist.

2. The medical payments coverage contained essentially the same exclusion, plus an even more precisely focused exclusion denying coverage for injuries "[s]ustained while occupying any motorized vehicle having less than four wheels."

Because we deem the "owned-but-not-insured" exclusion dispositive of the appeal, *see infra*, we do not refer again to the "less-than-four-wheels" exclusion.

3. To be sure, *Baker* involved uninsured motorist coverage rather than underinsured motorist coverage. In Rhode Island, however, the scope of coverage for loss engendered by uninsured and underinsured motorists is, by and large, coextensive. *See, e.g., Van Marter v. Royal Indem. Co.*, 556 A.2d 41, 44 (R.I.1989); *see also Carlton*, 744 F.Supp. at 398–99.

(1st Cir.1990); Fed.R.Civ.P. 56(e).[4] For another thing, whether or not the dirt bike was insurable seems to us of little consequence in the coverage calculus; otherwise, the uninsured motorist coverage would attach whenever a named insured or member of his/her household was riding in any type of owned conveyance not eligible for inclusion in the automobile policy, say, a tank or a motorized crane. We will not lightly assume that the Rhode Island General Assembly intended so absurd a result.

◼ Next, we remark the obvious: the policy exclusions relied upon by Worcester are clear and devoid of discernible ambiguity. In such an instance, the exclusions, like other contract terms, "must ... be applied as written and the parties are bound by them." *Malo*, 459 A.2d at 956. Furthermore, *Baker*, 383 A.2d at 1008–09, teaches that the "owned-but-not-insured" exclusion contravenes neither Rhode Island's public policy nor the legislative purpose undergirding R.I. Gen. Laws § 27–7–2.1. After all, as Rhode Island's highest court stated within the past month:

> Although the legislative purpose behind the statute was to protect an insured from economic loss, we do not believe it was intended to guard against all economic loss. We must impose reasonable limitations on the extent that the uninsured-motorist statute is construed to protect an insured because public policy also dictates that we construe the statute in a "manner that affords insurers some financial protection."

*Streicker*, 583 A.2d at 553 (quoting *DiTata v. Aetna Cas. & Sur. Co.*, 542 A.2d 245, 248 (R.I.1988)).

◼ Finally, we deem it comment-worthy that appellants, faced with a free choice of fora, made an election in favor of the federal district court. "We have warned, time and again, that litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new [state-law] trails will be blazed." *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 744 (1st Cir.1990); *see also Porter v. Nutter*, 913 F.2d 37, 40–41 (1st Cir.1990); *Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir.1989); *Taylor v. Aetna Cas. & Sur. Co.*, 867 F.2d 705, 706 (1st Cir.1989) (per curiam); *Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir.1977). Particularly where, as here, suitors seek to annul long-standing state precedent closely in point, they are hard put to complain if a federal court, called upon, in effect, to overrule the highest court of the state on a matter of state law, adopts a more deferential stance.[5]

*Affirmed.*

---

4. Under the established summary judgment protocol, it was the Carltons' burden, if and to the extent that they relied on the fact of uninsurability, to document that fact in some appropriate manner. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Garside*, 895 F.2d at 48–50; *Brennan*, 888 F.2d at 191.

5. While it is not necessary that a state case be explicitly overruled by the state court in order to lose its persuasive force, *Mason v. American Emery Wheel Works*, 241 F.2d 906, 909 (1st Cir.), *cert. denied*, 355 U.S. 815, 78 S.Ct. 17, 2 L.Ed.2d 32 (1957), there must at least be footprints pointing conspicuously in that direction. Here, what tracks exist lead more naturally to a conclusion that *Baker* still retains its vitality. Certainly, we have no warrant, on so exiguous a showing, to nullify the Rhode Island Supreme Court's considered views on a point of Rhode Island law.