DECISION
The matter presently before this Court is plaintiff's motion for declaratory judgment to determine the amount of uninsured motorist benefits available to plaintiff under an insurance policy with American Universal Insurance Company, (hereinafter "American Universal"). Additionally, this Court will determine whether the defendant, the Rhode Island Insurers' Insolvency Fund (hereinafter the "Fund") is obligated to pay the plaintiff the amount determined if said amount is in excess of the policy limit. Jurisdiction is pursuant to Rhode Island General Laws
1956 (1985 Reenactment) § 9-30-1, et. seq., the Uniform Declaratory Judgment Act.
Facts and Travel
The parties have stipulated to the following facts. On December 10, 1987, plaintiff, a passenger in her husband's car, was involved in a motor vehicle accident. The operator of the other vehicle, Gerald Fontaine, maintained a Fifty Thousand ($50,000) Dollar liability insurance policy with National Grange Mutual Insurance Company. National Grange paid that policy limit to plaintiff.
At the time of the accident, plaintiff's husband, John Falco, had an automobile insurance policy, No. SPA-0307588-07, with American Universal. This policy, which was renewed on November 7, 1987, provided coverage of single limit liability in the amount of Three Hundred Thousand ($300,000) Dollars each accident and uninsured/underinsured motorist coverage of Fifty Thousand ($50,000) Dollars each accident. Subsequently, American Universal went into receivership and their claims were taken over by the Fund pursuant to G.L. § 27-34-1, et. seq.
Guaranty Fund Management Services handled the claim for the Fund. In December of 1993, the underinsured motorist claim was submitted to an arbitration panel. On January 24, 1994, the arbitrators awarded plaintiff Ninety-Five Thousand ($95,000) Dollars in compensation for her injuries.
The Fund paid plaintiff Fifty Thousand ($50,000) Dollars of the Ninety-Five Thousand ($95,000) Dollar award. The parties' dispute concerns whether the limit of liability for the Fund is Fifty-Thousand ($50,000) Dollars, the fund's position, or Ninety-Five Thousand ($95,000) Dollars, the plaintiff's position. This motion for declaratory judgment followed.
Discussion
The parties agree that American Universal, through its agent, failed to advise plaintiff and her husband that they were entitled to uninsured motorist coverage in an amount equal to their bodily injury liability limits. (Defendant's Memorandum, pg. 2). Additionally, the Fund concedes that such notification was required by the then current G.L. § 27-7-2.1(A)(3), as amended, which provides, in pertinent part, that
 [n]o policy . . . shall be delivered or issued . . . with respect to any motor vehicle . . . unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured motor vehicles . . . provided, however, that the insurer shall make uninsured motorist coverage available in an amount equal to the insured's bodily injury liability limits at the request of the named insured, and . . . that the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limit set forth in section 31-31-7.
Section 27-7-2.1 goes on to state, in pertinent part, that
 After selection of limits by the named insured, . . . the insurer shall be required to notify the policyholder in any renewal, . . . as to the availability of such coverage or optional limits.
At issue is this undisputed lack of notification's effect on the amount to which plaintiff is entitled under the underinsured motorist coverage.
Uninsured/underinsured motorist provisions in automobile policies must comport with public policy mandates intended by the General Assembly. Carlton v. Worcester Ins. Co., 744 F. Supp. 395, affirmed 923 F.2d 1 (1990). In enacting the uninsured motorist coverage statute, the legislature intended that, as a matter of public policy, protection be afforded to those who have attempted to protect the public interest and themselves by purchasing insurance. DiTata v. Aetna Casualty and Surety Co.,542 A.2d 245 (1988). What is clear from the aforementioned statute is that an offer of uninsured motorist coverage equal to the liability coverage be made by the insurer with the issuance of each automobile policy, whether a renewal or original policy.American Universal Ins. Co. v. Russell, 490 A.2d 60, 62 (1985). In the case at hand, it is undisputed that no such offer was made by American Universal to plaintiff.
In Aetna Casualty and Surety Co. v. St. Angelo,615 A.2d 1018 (1992), our Supreme Court ruled on facts similar to those in the case at bar. In the Aetna case, P.C. 89-4917, October 27, 1991, St. Angelo was issued an automobile policy on October 20, 1987. That policy provided uninsured/underinsured motorist coverage of Twenty-Five Thousand ($25,000) Dollars and liability coverage of One Hundred Thousand ($100,000) Dollars. Aetna, however, failed to notify St. Angelo that uninsured motorist coverage was available in an amount equal to his bodily injury liability limit. Subsequently, St. Angelo was involved in an accident on April 13, 1988.
The Aetna order affirmed the trial court's decision granting St. Angelo One Hundred Thousand ($100,000) Dollars in uninsured motorist coverage pursuant to his policy. Id. This Court finds the Aetna case persuasive. Due to Aetna's failure to meet its obligation under § 27-7-2.1(A), St. Angelo was entitled to uninsured motorist coverage equal to his bodily injury liability unit. Id. Similarly, in the case at bar, American Universal's failure to offer uninsured motorist coverage in the amount of $300,000 constitutes the same noncompliance with § 27-7-2.1(A). Thus, this Court holds plaintiff is entitled to underinsured motorist coverage in an amount equal to their bodily injury liability limit, that of Three Hundred Thousand ($300,000.) Dollars.
Although plaintiff is entitled to the aforementioned coverage, the question of whether the Fund is obligated to pay Forty-Five Thousand ($45,000) Dollars, the amount in excess of the stated policy limit, must be addressed. The Rhode Island Insurers' Insolvency Fund is a nonprofit unincorporated legal entity created by R.I.G.L. 1956 (1989 Reenactment) § 27-34-6. The purpose of this fund is:
 to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . ."
R.I.G.L. 1956 (1989 Reenactment) § 27-34-2. In accordance with §27-34-4, the provisions of the Act shall be construed liberally to effect such purpose.
The Fund argues that it owes no duty to pay plaintiff more than the Fifty Thousand ($50,000) Dollars of uninsured motorist coverage provided in the policy. Although the fund admits its obligation to protect policyholders whose insurers become insolvent during the policy term, the Fund differentiates its obligation with that of a true "insurer." The Fund relies on theAetna case and § 27-2-2.1 for the proposition that only insurers are subject to the notification requirements of the uninsured motorist statute; and thus, the Fund would not be liable for American Universal's noncompliance with § 27-2-2.1. This Court holds the Fund's reasoning unsupported by the language of the Act.
Section 27-34-8(1)(b) of the Rhode Island Insurers Insolvency Fund states that,
 the [f]und shall be deemed the insurer to the extent of its obligation on covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent. (emphasis added)
When dealing with statutory interpretation, our Supreme Court has stated on several occasions that, "when the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory extension exists." Ellis v. Rhode IslandPublic Transit Authority, 586 A.2d 1055, 1057 (1991) (citingO'Neil v. Code Commission for Occupational Safety and Health,534 A.2d 606, 608 (1987)). Furthermore, this Court is required to give the language of a statute its plain and obvious meaning.Id.
The words of the aforementioned statute are clear and unambiguous. The Fund shall be deemed the insurer and shall have all duties of the insolvent insurer as if the insurerhad not become insolvent. R.I.G.L. 1956 (1989 Reenactment) § 27-34-8 (Emphasis Added). This Court has previously stated that had American Universal remained solvent, it would be obligated to pay plaintiff the additional Forty-Five Thousand ($45,000) Dollars. Since § 27-34-6 of the Act obligates the Fund to the extent of the insurer's liability, DiTata v.Aetna Casualty and Surety Co., 542 A.2d 245, 246 n. 1 (1988), the Fund is obligated to pay plaintiff Forty-Five Thousand ($45,000) Dollars.
Moreover, the Fund shall be obligated to pay "covered claims" existing prior to the determination of the insolvency of an insurer. Section 27-34-8(1)(a). "Covered claim" is defined by the Act as "an unpaid claim . . . submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this Chapter applies . . ." R.I.G.L. 1956 (1989 Reenactment) § 27-34-5(8), as amended. Since the plaintiff's claim arises out of its uninsured motorist coverage, this Court finds said claim to be a "covered claim" under the plain and clear language of section 27-34-5(8).
For the foregoing reasons, this Court declares that plaintiff is entitled to underinsured motorist coverage, under the policy of insurance numbered SPA-0307598-07, of Three Hundred Thousand ($300,000.) Dollars. Further, this Court declares and Fund obligated, under the Rhode Island Insurers' Insolvency Fund Act, § 27-34-1, et seq., to pay plaintiff Forty-Five Thousand ($45,000) Dollars, the difference between the arbitration award of Ninety-Five Thousand ($95,000) Dollars and the Fifty Thousand ($50,000) Dollars already paid to plaintiff.
Counsel shall prepare the appropriate order for entry.