Chambers v. Warden, NHSP          CV-02-304-JD  01/08/04
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Randolph Chambers

        v.                              Civil No. 02-304-JD
                                        Opinion No. 2004 DNH 004
Warden, New Hampshire
State Prison, et al.


                              O R D E R


        The plaintiff, Randolph Chambers, proceeding pro se, brings

a civil rights claim under 42 U.S.C. § 1983, alleging that his

treatment at the New Hampshire State Prison violated the Eighth

Amendment and also alleging that the defendant doctors were

negligent in their treatment of him.  The defendant doctors move

for summary judgment on the ground that in the absence of medical

experts, Chambers cannot prove his claims against them.  The

warden moves for summary judgment on the alternative grounds that

Chambers did not exhaust his administrative remedies as required

by 42 U.S.C. § 1997e(a) and that he cannot prove his claims

against her.  Chambers objects to summary judgment and has filed

a motion to introduce expert witness reports.

        Chambers also moved for a preliminary injunction to require

the prison to send him to a pain management clinic to treat his

back pain.  The magistrate judge has issued a report and

recommendation that the motion be denied.

I.  Motion to Introduce Expert Witness Reports

Chambers moves for leave to submit the results of a liver biopsy he received in July of 2003.  The defendants did not object to Chambers' motion.  Although no expert opinion is attached to the motion, Chambers apparently refers to a letter to him, dated July 15, 2003, from Marcy G. Southwell, PA-C, GI Associates of New Hampshire, which he submitted with his objection to summary judgment.  That letter provides the results of a liver biopsy that was conducted on June 20, 2003.  There being no objection, the letter dated July 15, 2003, will be considered as part of the record for purposes of deciding summary judgment.

II.  Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must

2

present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

Randolph Chambers has been incarcerated at the New Hampshire State Prison since September of 2001. He began receiving medical care immediately upon his arrival and has continued to receive medical care to the present time. He has been treated by Dr. Edward Eldridge, Dr. Herb T. Myers, and Dr. David M. Freedman, who are defendants in this case, along with other medical care providers who are not defendants.

Chambers alleges in his complaint that he was not properly treated for the Hepatitis-C virus, lower back pain, and skin disease. As summarized by the defendants, the treatment Chambers has received includes physical therapy, physical examination and consultation with staff and outside medical care providers, and back surgery. In response to the defendants' motion for summary judgment, Chambers contends that the care and treatment he received were inadequate to address his back pain and the Hepatitis C virus and that some of the treatment was provided only after he brought suit.

The defendants offer the affidavit of Dr. David M. Freedman, who identifies himself as Chambers' primary physician beginning late in 2002.[1] Dr. Freedman gives his opinion that Chambers' medical care and treatment since he became the attending physician have been fully consistent with the applicable standard of care. The defendants also submit the affidavits of Anna Fazzina, R.N., the nurse coordinator of the prison infirmary, and Joyce Leeka, the Administrator of Health Information Management at the New Hampshire Department of Corrections, who provide summaries of Chambers' medical care and treatment.

A hearing was held on November 25, 2003, to address Chambers' motion for a preliminary injunction to require the prison to send him to a pain management clinic to treat his back pain. The magistrate judge issued a report and recommendation on the same day, recommending that the motion be denied. Chambers requested and was granted an extension of time to file an objection to the report and recommendation, but he did not file an objection within the time allowed. The report and recommendation is approved.

---

[1]It appears from the records that Freedman treated Chambers from the time he arrived at the prison, although he may not have been the primary physician.

4

A. <u>Doctors' Motion for Summary Judgment</u>

The doctor defendants move for summary judgment on the ground that expert medical opinion testimony is necessary to prove both Chambers' state law medical malpractice claim and his Eighth Amendment claim. They contend that because Chambers has not disclosed an expert witness, he cannot prove his claims. Chambers agrees that he did not disclose an expert witness within the time allowed under the discovery plan, but he contends that he should be allowed to submit the medical records from his liver biopsy as his expert report. Although the court has permitted Chambers to add the letter he submitted pertaining to his liver biopsy to the record for summary judgment, that letter does not constitute an expert witness opinion or disclosure. <u>See</u> Fed. R. Civ. P. 26(a)(2). Therefore, Chambers has not disclosed an expert witness who would testify in support of his claims.

1. <u>Medical Malpractice</u>

Under New Hampshire law, a plaintiff cannot prove medical negligence without expert opinion testimony as to the applicable standard of care and causation. N.H. Rev. Stat. Ann. § 507-E:2; <u>Emerson v. Bentwood</u>, 146 N.H. 251, 256 (2001). It is undisputed that Chambers does not have an expert witness to testify on his behalf. Neither the letter from PA-C Marcy G. Southwell nor any

5

other medical evidence in the summary judgment record suffices as an expert opinion.  Therefore, Chambers cannot prove his medical negligence claim under New Hampshire law.

To prove an Eighth Amendment violation, Chambers must show that the defendants were deliberately indifferent to his serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "A 'serious medical need' is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995) (internal quotation marks omitted).  Neither medical negligence nor a disagreement between the medical staff and the prisoner about which course of treatment to follow constitutes an Eighth Amendment violation.  See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993); Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  On the other hand, medical treatment that falls so far below the applicable medical standard as to deny essential care shows deliberate indifference to serious medical needs.  Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

Chambers acknowledges that he received medical care from the time he first arrived at the prison.  He contends, however, that he did not receive adequate treatment for the Hepatits-C virus,

6

back pain, or his skin condition and that some treatment was not provided until after he filed suit on June 26, 2002. Chambers' medical records show that he has received medical attention addressing those conditions.

Chambers' Hepatitis-C diagnosis was documented and followed from the time he arrived in September of 2001. Chambers does not identify what treatment was medically necessary and yet was not provided. A medical note dated April 2, 2002, states that the new regimen for treating the Hepatitis C virus was not then available. In June of 2002, Dr. Freedman's note states that a protocol was being developed for Chambers and that his test results showed that he was doing better. A medical record dated June 13, 2002, also indicated improvement over past results. After a hearing held in this case on June 28, 2002, the court noted that the state represented that a medical plan was in place to address Chambers' Hepatitis-C condition.

Tests in October of 2002, showed an increase in the liver enzyme level. Additional tests were done and a liver biopsy was scheduled in November of 2002. The biopsy was cancelled due to Chambers' back surgery, and the biopsy was performed June of 2003. The only record of the results of the biopsy is a letter, dated July 15, 2003, from Marcy G. Southwell, PA-C, which reports that Chambers had a moderate amount of inflammation and mild to

moderate scarring or necrosis.  She recommended that he seek treatment for the Hepatitis-C virus.

The summary judgment record does not include medical records documenting any treatment following the recommendation in July of 2003 by the medical care provider.[2]  During the preliminary injunction hearing held on November 25, 2003, Chambers admitted that he has stopped taking pegylated interferon, which he initially sought to treat his Hepatitis-C condition and which was prescribed and provided by the prison.  He has not challenged the treatment that was prescribed, and therefore, appears to be satisfied with the treatment he is now receiving.

Chambers was first seen on September 21, 2001, for his back pain.  Following the June 28, 2002, hearing, the court noted that Chambers was scheduled for appointments with a physical therapist and an orthopaedist.  Chambers has been treated with medication, physical therapy, and surgery to address his back condition and pain.

Chambers primary complaint is that the defendants failed to adequately address his back pain with medication.  He also contends that his neurosurgeon, Dr. Jennifer Kernan, recommended

_____

[2]The parties' papers relating to the present summary judgment motion were filed in July of 2003.  The defendants did not have the biopsy results, and Chambers provides only the letter from PA-C Southwell.

8

that he be referred to a pain management clinic, which the prison has not done. Dr. Kernan stated in her examination note that Chambers showed some degree of symptom magnification and that continued narcotic treatment would not be appropriate. She recommended a home exercise program and that pain management be used instead of long-term narcotic medicine, if necessary.

Dr. Freedman's note of September 16, 2003, shows that he interpreted Dr. Kernan's recommendation of home exercise and pain management in lieu of narcotic medication to suggest pain management if the home exercise program failed. Dr. Freedman also noted that Chambers was addicted to narcotics, that he magnified his symptoms of pain, and that he had not tried the exercise plan. The treatment plan Dr. Freedman prescribed was to implement an exercise program to be coordinated by the physical therapist and to taper off use of narcotic medication.

At the hearing held on November 25, 2003, Dr. Freedman testified that he had conferred with Dr. Kernan about Chambers' treatment. He testified that they agreed that Chambers' medication must be changed from vicodin, which masks heroin usage, to ultram which does not, that Chambers must engage in a "home" exercise program, and that only after he is weaned from medication and has engaged in the exercise program and still experiences significant pain would a pain management clinic be

9

tried.  Chambers admitted that he refuses to do the exercise program and does not take the prescribed medication.

The medical records indicate that Chambers also received treatment for his skin condition.  He received medicated cream for a rash beginning in December of 2001.  He was also treated with an antibiotic, Prednisone, and Atarax.  When the rash persisted over a period of eight months, he was referred to a dermatologist, who did a skin biopsy.  The results of the biopsy indicated scabies and dermatitis.  Treatment was prescribed and apparently was effective in resolving the rash.


2.  Eighth Amendment

Medical expert opinion may be required to show an Eighth Amendment violation due to deliberate indifference to a serious medical need when the nature of the medical need is not apparent.  See, e.g., Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002); Comstock v. McCrary, 273 F.3d 693, 708 (6th Cir. 2001); Campbell v. Sikes, 169 F.3d 1353, 1368-69 (11th Cir. 1999); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).  In this case, the record does not indicate that any treatment was prescribed or recommended for Chambers' Hepatitis-C virus until after the biopsy results were evaluated in July of this year.  Chambers then apparently received appropriate treatment, although he

refuses to take the prescribed medication. The need and availability of treatment for Chambers' Hepatitis-C virus before July of this year are not apparent from the record, so that such a determination would require medical expert opinion. In the absence of expert opinion, Chambers cannot show that the defendant doctors were deliberately indifferent to a serious medical need for treatment due to the Hepatitis-C virus.

Chambers has received treatment for his Hepatitis-C virus, his back condition, and his skin disease. The record does not indicate that any treatment was recommended or prescribed and not provided. He has not shown that the treatment he received was so deficient or substandard as to constitute deliberate indifference to his serious medical needs. Therefore, he has not shown that the defendant doctors violated his Eighth Amendment rights.

B. Warden's Motion for Summary Judgment

The warden contends that Chambers failed to exhaust the available administrative remedies as is required by 42 U.S.C. § 1997e(a). The warden alternatively argues that Chambers cannot succeed on the merits of his claims. Because the record does not support Chambers' claims on the merits, as determined in the context of the defendant doctors' motion, it is not necessary to

consider the affirmative defense of administrative exhaustion.[3]

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions for summary judgment (documents no. 32 and 33) are granted. The plaintiff's motion to introduce expert witness reports (document no. 37) is granted to the extent that medical evidence pertaining to his liver biopsy, submitted with his response to the defendants' motions for summary judgment, was considered. The report and recommendation issued on November 25, 2003, (document no. 57) is approved, denying the plaintiff's motion for injunctive relief (document no. 40).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 8, 2004

cc:   Randolph L. Chambers, pro se
      Andrew B. Livernois, Esquire
      Blake M. Sutton, Esquire

_____

[3]The administrative exhaustion requirement of § 1997e(a) is an affirmative defense that must be pled and proven by the defendant. <u>See</u> <u>Casanova v. DuBois</u>, 304 F.3d 75, 78 n.3 (1st Cir. 2002). Because the doctor defendants did not raise the issue of exhaustion in their motion, it was appropriate to consider the merits of Chambers' claims first.