Michael E. LOMBARDI, Jr. and Donald Lombardi, Co-Administrators

v.

MERCHANTS MUTUAL INSURANCE COMPANY et al.

No. 79–102–Appeal.

Supreme Court of Rhode Island.

May 12, 1981.

Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Richard A. Boren, Howard I. Lipsey, Linda J. Kushner, Providence, for plaintiffs.

Gunning, LaFazia & Gnys, Edward P. Sowa, Jr., Guy Wells, David J. McOsker, Martin M. Zucker, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court pursuant to a complaint brought by the plaintiffs seeking a declaratory judgment on the basis of an agreed statement of facts. The subject of the complaint was a dispute over entitlement to the proceeds of a bond filed by the defendant Stuyvesant Insurance Company of New York (Stuyvesant). A condensation of the agreed statement of facts will point up the issues in controversy.

The plaintiffs' decedent, Michael Lombardi (Michael) died as the result of an automobile accident that occurred on April 3, 1970. At that time Michael was a named insured under a policy issued by defendant Lumberman's Mutual Casualty Company (Lumberman's) pursuant to which, coverage was furnished, with a policy limit of $10,000, for damages incurred by the insured as a result of the negligence of the owner or operator of an uninsured automobile. Michael was also a named insured under a similar policy that was issued by defendant Merchants Mutual Insurance Company (Merchants) and had an identical policy limit. The operator of the automobile involved in the fatal

accident, Joseph Silva, was an uninsured motorist.

Lumberman's paid the sum of $10,000 to plaintiffs on February 8, 1971, and plaintiffs executed a release and trust agreement in consideration thereof to Lumberman's. The plaintiffs also brought suit against Merchants in the Superior Court for the County of Providence; and Merchants impleaded Joseph Silva, the tortfeasor, as a third-party defendant. The plaintiffs also brought a separate action against Joseph Silva in the Superior Court for the County of Kent. On October 8, 1970, Joseph Silva obtained a safety responsibility bond from Stuyvesant in the amount of $10,100 to secure any judgment that might be obtained by plaintiffs as a result of their action against Silva. The Providence and Kent County cases against Merchants and Silva were consolidated for trial in the county of Kent. A trial before a judge sitting without the intervention of a jury resulted in a judgment for plaintiffs against Silva, including interest and costs, in the sum of $32,265.10; also judgment was rendered in favor of Merchants against Silva on Merchants's third-party complaint for $10,000, conditioned upon payment by Merchants of $10,000 to plaintiffs pursuant to Merchants's obligation under the uninsured motorist policy. On January 20, 1976, Merchants deposited $10,000 plus costs into the registry of the Superior Court. This sum was paid over to plaintiffs on July 1, 1976.

Thereafter, Merchants brought an action against Stuyvesant in the Superior Court for Providence County, upon which a default judgment was ultimately entered on September 23, 1976, in the sum of $10,000 plus costs by reason of the failure of Stuyvesant to respond to the action. Thereafter, plaintiffs in this action and Lumberman's sought to intervene and vacate this default judgment, but their motions were denied on September 30, 1976. Thus, plaintiffs and Lumberman's did not become parties to the action in which the default judgment had been rendered.

On October 28, 1976, Stuyvesant sought to obtain injunctive relief against Merchants from serving execution in respect to the bond filed by Stuyvesant. No decision was ever rendered upon this request for relief. The complaint for declaratory judgment filed by plaintiffs sought a determination among the contending parties, plaintiffs, Merchants and Lumberman's, regarding entitlement to the proceeds of the safety responsibility bond in the amount of $10,100. The trial justice issued judgment, declaring that the proceeds of the bond must, as a matter of law, inure to the estate of the decedent, represented by plaintiffs. He further determined that the default judgment that had been obtained by Merchants against Stuyvesant was not binding upon plaintiffs. He also decided in the initial judgment that Stuyvesant was only liable to the extent of the bond in the amount of $10,100. Thereafter, plaintiffs moved to amend the judgment; and in response to this motion, the judgment was amended to provide

"1. That as a matter of law, the proceeds of the bond issued by Stuyvesant Insurance Company of New York must inure to the Estate of Michael E. Lombardi, Jr. [*sic*].

"2. That the default judgment obtained by Merchants Mutual Insurance Company against Stuyvesant Insurance Company of New York (C.A. 76–2643) is not binding upon the administrators of the Estate of Michael E. Lombardi, Jr. [*sic*]."

From this judgment Merchants, Lumberman's, and Stuyvesant have appealed. We affirm.

The right of Merchants and Lumberman's against the tortfeasor, Joseph Silva, would arise as a result of the doctrine of subrogation pursuant to which an insurer, if it pays a loss incurred by its insured, is entitled to assert the rights that its insured would have against the third party who was responsible for the injury. *See Silva v. Home Indemnity Co.*, R.I., 416 A.2d 664 (1980). The plaintiffs here do not question the equitable doctrine of subrogation but take the position that Lumberman's and Merchants would not be entitled to share in the proceeds of Stuyvesant's bond unless and until

plaintiffs' loss, as represented by the judgment, has been fully paid. With this contention we agree.

We decided in *Aldcroft v. Fidelity and Casualty Co.*, 106 R.I. 311, 321–22, 259 A.2d 408, 415 (1969), that the filing of a safety responsibility bond does not change the status of an uninsured motorist so long as no liability insurance was in effect at the time the accident occurred. Thus, at all times pertinent to this controversy, Joseph Silva must be regarded as an uninsured motorist. The agreed statement of facts clearly discloses that as a result of the payments by Lumberman's and Merchants, plaintiffs' administrators have received the total sum of $20,000 toward payment of the loss. Consequently, the sum of $12,265.10 remains unpaid. Execution against Mr. Silva was returned unsatisfied for the balance.

It has been held that under either rights of subrogation or a contract of indemnity "a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." (footnote omitted) *United States v. National Surety Co.*, 254 U.S. 73, 76, 41 S.Ct. 29, 30, 65 L.Ed. 143, 144–45 (1920).

Similar principles were enunciated by Mr. Justice Cardozo in *American Surety Co. v. Westinghouse Electric Manufacturing Co.*, 296 U.S. 133, 137, 56 S.Ct. 9, 11, 80 L.Ed. 105, 109–10 (1935).

On facts similar to those in the case at bar, in *White v. Nationwide Mutual Insurance Co.*, 361 F.2d 785 (4th Cir. 1966), the Court of Appeals in passing upon the right of subrogation, held that such right did not arise until the insured had received full satisfaction of his judgment against the uninsured driver. In that case the insured had obtained partial satisfaction of a judgment against the uninsured motorist. Nationwide sought to diminish the amount of its liability to its insured pursuant to its uninsured motorist coverage by the amount of this partial satisfaction. The court rejected this assertion and ordered Nationwide to pay a sufficient amount to satisfy

fully the judgment that had been obtained by the insured. An identical result was achieved in *Martin v. State Farm Mutual Automobile Insurance Co.*, 375 F.2d 720 (4th Cir. 1967), wherein the Court of Appeals again reiterated the principle that an uninsured motorist carrier would not become subrogated to its insured's right against the tortfeasor until the total judgment was satisfied. Consequently, the carrier could not claim credit for partial satisfaction received by the insured. We believe that the general rules enunciated by the Supreme Court of the United States and by the Court of Appeals for the Fourth Circuit are fundamentally sound and should be applied to the case at bar. *See also* 16 *Couch on Insurance* 2d, § 61.61 at 276 (Anderson ed. 1966); 6A Appleman, *Insurance Law and Practice*, § 4095 at 275 (1972).

■ Applying these principles to the instant controversy, it seems reasonably clear that the proceeds of the bond issued by Stuyvesant will be insufficient to defray the balance due under plaintiffs' judgment. Thus, no right of subrogation has arisen in favor of Merchants or Lumberman's to share in these proceeds. Lumberman's, however, contends that the instrument of release executed by plaintiffs in return for its payment of $10,000 has the effect of assigning plaintiffs' interest in this bond to Lumberman's. If we assume, without deciding, that the effect of the instrument is as represented, then placing such a condition upon the payment of moneys due and owing under the uninsured motorist contract would be void as against the policy established by G.L. 1956 (1979 Reenactment) § 27–7–2.1, which requires that coverage be furnished in accordance with limits set forth in G.L. 1956 (1968 Reenactment) § 31–31–7. This coverage requirement, without equivocation, provides for a minimum coverage of $10,000 for death or injury. It does not provide for diminution of said coverage by virtue of a partial satisfaction from the uninsured motorist or from a bond that might be filed on his behalf. This instrument would be subject to the same defect noted in *Aldcroft v.*

*Fidelity and Casualty Co.*, 106 R.I. 311, 259 A.2d 408 (1969), wherein this court voided a provision in an uninsured motorist policy that purported to reduce coverage by amounts covered under workers' compensation or disability benefits laws. In commenting upon this attempt to reduce effective coverage, we observed:

"Nothing in the statute warrants the issuance of a policy providing for such protection of the insured motorist in any lesser amount or in any alternative amount. The coverage directed in the statute must be given unless the insured rejects it in specific terms. We certainly are unable to agree that it was ever intended to provide a benefit for the insurance carrier." *Id.* at 319, 259 A.2d at 414.

In *Poulos v. Aetna Casualty & Surety Co.*, R.I., 379 A.2d 362 (1977), the insurance company sought to deduct workers' compensation benefits from amounts due under an uninsured motorist policy. The policy limits in that case exceeded the minimum required by § 31–31–7. However, after deduction of the workers' compensation benefits as proposed, the balance remaining would have been insufficient to compensate plaintiff for his actual loss. We did not permit the deduction under those circumstances. This was in furtherance of the principle enunciated in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971), wherein we stated that the statutory purpose behind uninsured motorist coverage was to protect an insured against his actual loss.

If an insurance carrier cannot issue a policy that has the effect of diminishing its effective coverage under the uninsured motorist requirement, a fortiori it may not demand as a condition for payment of sums due and owing under such policy a release or assignment that would have the same effect of diluting its proper liability. Thus, the form of Lumberman's release and/or trust agreement cannot reduce its basic statutory obligation.

■ Lumberman's also contends that the portion of plaintiffs' judgment which con-stitutes interest and costs should not be considered as part of plaintiffs' damages in this case but that only the sum of $24,500, which represents the basic award of compensation, should be considered as damages for purposes of this subrogation dispute. However, in *Factory Mutual Liability Insurance Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970), we unequivocally held that interest was an integral part of damages and not an item of expense or cost. We stated that the term "damages" referred to the judgments entered by the clerk of the court and not to the amount of the verdict or award by the trier of fact. Consequently, plaintiffs' damages here consisted not only of the compensatory award made by the trial justice but also of the prejudgment interest that represented an item of damages included in the judgment to compensate plaintiffs for waiting for the recompense to which they were legally entitled. It might well be argued that costs are an expense rather than an item of damages, *Factory Mutual Liability Insurance Co. of America v. Cooper, supra*. However, since the costs in this case amounted only to $48.10 and since the amount of the bond will be insufficient to cover the damages included in the judgment, we need not determine whether costs must be satisfied before the right of subrogation would arise. We shall postpone determination of that question until a concrete, as opposed to a hypothetical case, is presented to us.

■ In its appeal, Stuyvesant argues that the trial justice should have issued a declaratory judgment that would have limited its liability to all parties to the amount of its bond, namely, $10,100. Although we believe that in the ordinary course of events Stuyvesant's liability would be so limited, the trial justice correctly did not seek to determine the effect of Merchants's default judgment beyond the declaration that it was not binding upon the plaintiffs. The effect of the default judgment as between Merchants and Stuyvesant has been the subject of other litigation that has not yet been concluded. Indeed, a request for injunctive relief against execution on the de-

fault judgment has been heard, but not yet decided, by another justice of the Superior Court. Consequently, the trial justice in this case properly did not attempt to adjudicate that controversy. We believe that in issuing the judgment in this case, he decided only those disputed matters that had been submitted to him.

For the reasons stated, the appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case are remanded to the Superior Court.

SHEA, J., did not participate.