Nickolas DiTATA et al.

v.

The AETNA CASUALTY AND SURETY COMPANY.

No. 86–282–Appeal.

Supreme Court of Rhode Island.

June 2, 1988.

**246**

Edward P. Sowa, Jr., Gunning, LaFazia & Gnys, Inc., Providence, for plaintiffs.

Gerald John Petros, Hinckley, Allen, Tobin & Silverstein, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This civil action comes before us on the plaintiffs' appeal from a grant of summary judgment issued in Superior Court on the basis of an agreed statement of facts. A trial justice in the Sixth Division District Court had previously granted a similar motion in response to the plaintiffs' initial complaint.

The parties have stipulated to the facts from which this insurance dispute arises. The plaintiffs, Nickolas and Gloria DiTata (the DiTatas), purchased a personal automobile-insurance policy from defendant, Aetna Casualty and Surety Company (Aetna). The policy period ran from August 18, 1979, through February 18, 1980. The insurance contract contained uninsured-motorist coverage with a $50,000 liability limit for each accident and a separate medical-payments provision for up to $3,000 for each person injured in an accident.

The DiTatas were severely injured when they were involved in a car accident with another vehicle on December 5, 1979. The operator of the second vehicle carried liability coverage with Security Mutual Insurance Company (Security) in the amount of $60,000. Security thereafter became defunct, and the DiTatas sought relief from their insurer, Aetna, under the uninsured-motorist provision of their policy.[1] After an arbitration hearing held on March 9, 1984, Aetna provided recovery to plaintiffs in the amount of the policy limit. Relying

---

1. According to *Fagnant v. Pacific Insurance Company of New York,* 107 R.I. 709, 270 A.2d 919 (1970), when an insurer becomes insolvent subsequent to an accident, the tortfeasor retains his status as an insured. Despite the lack of available funds, plaintiffs would be unable to qualify for uninsured-motorist protection. The statutory rules of the Rhode Island Insurers' Insolvency Fund (the fund) and the insolvency provision in this insurance contract circumvent this rule. General Laws 1956 (1979 Reenactment) § 27–34–7 creates the Insurers' Insolvency Fund for this state. The fund guarantees payment of claims against insurers that become insolvent. *See* 8C Appleman, *Insurance Law and Practice* § 5076.35 at 167 (1981). Section 27–34–6 obligates the fund to the extent of the insurer's liability. Section 27–34–12, however, curtails that responsibility when the claimant has an insolvency provision in his or her own policy. Claimants must exhaust any insolvency provision in their own policies prior to seeking compensation from the fund. The policy defines "Uninsured motorist vehicle" as a vehicle "[t]o which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company denies coverage or is or becomes insolvent."

on the $10,000 difference between Security's liability policy and Aetna's coverage, the Rhode Island Insurers' Insolvency Fund (the fund) provided an additional $10,000 to the DiTatas' recovery. Seeking further coverage for their medical bills, plaintiffs pursued additional recovery under the Medical Payments Section of their Aetna policy. Aetna refused payment, and plaintiffs filed a complaint on August 22, 1984. In Sixth Division District Court and later in Superior Court, Aetna moved for summary judgment, asserting that the company had already made medical payments under the uninsured-motorist coverage. The defendant's motion prevailed in both instances, and plaintiffs appealed to this court for reversal.[2]

The policy provision in question, the limiting language of the medical-payments section, reads:

> "Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under any Auto Liability or Uninsured Motorists Coverage provided by this policy.
>
> "No payment will be made under this coverage unless the injured person or his legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under any Auto Liability or Uninsured Motorists Coverage provided by this policy."

In applying any medical recovery toward the uninsured-motorist coverage, the terms clearly permit the insurer to limit its liability to the uninsured-motorist amount. The plaintiffs contend, as they did below, that this provision violates the public-policy rationale supporting uninsured-motorist legislation. We hold, however, that this manner of setoff complies with the legislative intent of G.L. 1956 (1979 Reenactment) § 27-7-2.1 as it existed at the time of this action. That section provides in pertinent part:

> "No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless coverage is provided therein or supplemental thereto * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles * * * provided that the named insured shall have the right to reject such coverage, or that portion thereof that applies to property damage."

 This court has reiterated on several occasions the legislative intent that the statute embodied prior to its amendment in 1987.[3] Uninsured-motorist coverage protects the insured against economic loss resulting from injuries caused by a negligent uninsured operator. *Aldcroft v. Fidelity & Casualty Co. of New York*, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969); *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 356, 223 A.2d 447, 450 (1966). The statute requires insurance carriers to provide protection for those claimants who voluntarily contract with licensed carriers for liability coverage as against uninsured operators. *Allstate*, 101 R.I. at 355–56, 223 A.2d at 450. It thus protects those who have attempted to protect the public interest and themselves by purchasing insurance. Contracts for uninsured-motorist coverage, furthermore, must be construed in light of the public policy mandated by the Legislature. *Poulos v. Aetna Casualty & Surety Co.*, 119 R.I. 409, 412, 379 A.2d 362, 363 (1977). The primary object remains indemnification for an insured's loss rather than defeat of his or her claim. *See* 13 Appleman, *Insurance Law and Practice* § 7386 at 147 (1976).

---

2. The three years that have elapsed since the Superior Court judgment of November 5, 1985, are the result of delays by both parties and the case's travel through the show-cause calendar of this court.

3. In 1987 the Legislature amended this statute by two Acts. *See* G.L. 1956 (1979 Reenactment) § 27-7-2.1, as amended by P.L.1987, ch. 380, § 1 and P.L. 1987, ch. 435, § 1.

In order fully to effectuate these purposes, this court has disallowed contractual limitations that curtail an insured's recovery in instances in which the insured has not recovered the amount of his or her actual loss. *See Lombardi v. Merchants Mutual Insurance Co.*, 429 A.2d 1290, 1292 (R.I.1981) (condition of release by insured in order to obtain payment from uninsured-motorist coverage is void as against public policy); *Poulos*, 119 R.I. at 414–15, 379 A.2d at 365 (insurer's deduction of insured's workers' compensation benefits permissible only to the extent of double recovery).

Uninsured-motorist coverage, however, automatically brings the insurer and its insured into a position of conflict. *See* 8A Appleman, *Insurance Law and Practice* § 4902.65 at 279 (1981). A public policy of protecting insurers against providing double recovery therefore competes with the public policy of compensating the insured. "[O]ur statute allows recovery of the full amount of the coverage so long as the amount of the recovery does not exceed the amount of the insured's actual loss." *Poulos*, 119 R.I. at 414, 379 A.2d at 365 (quoting *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 153, 282 A.2d 584, 590 (1971)).

■ This court, therefore, has construed the uninsured-motorist statute in a manner that affords insurers some financial protection. The statute sets a minimum liability for the insurer rather than a maximum recovery for the insured. *Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 317 (R.I. 1980) (citing *Pickering*, 109 R.I. at 152, 282 A.2d at 590). Uninsured-motorist protection does not "attempt to equate the position of one who recovers from his own insurance company with the position of one who recovers liability insurance from the tortfeasor's insurance company." *Poulos*, 119 R.I. at 413, 379 A.2d at 364. The

parties enter into a contract, the insurance policy, in order to protect their respective interests. As a matter of contract law, the specific policy terms predominate over equitable considerations. *See* 13 Appleman, § 7386 at 155. In this contractual setting, a limited medical-pay provision such as appears in the instant insurance contract is an important, legitimate limitation for the insurer. The provision works in conjunction with uninsured-motorist coverage to prevent double payment of medical expenses by the insurer. 8A Appleman, § 4902.65 at 279; *see also* 15A *Couch on Insurance 2d* § 56:32 at 43 (rev. ed. 1983).

Analyzing the insurer and the insured's relationship in light of statutory law, we determine that at the time of this action the Legislature had expressed no objection to this type of contractual protection.[4] We hold, therefore, that the insurer was entitled to limit its payment to the plaintiffs to the uninsured-motorist coverage because it provided the statutory minimum recovery of $50,000. Although we realize that the DiTatas have not been fully recompensed for medical expenses arising out of their injuries, in these circumstances their insurer does not bear the responsibility of making them whole.

For these reasons we affirm the judgment of the Superior Court. The plaintiffs' appeal is denied, and the papers of this case are remanded to the Superior Court.

---

**4.** Section 27–7–2.1(C), as amended by P.L. 1987, ch. 435, § 1 states:

"Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary."

As amended, the statute therefore expresses a legislative preference for separate reserves under the described conditions.