**Lee FALCO**

v.

**RHODE ISLAND INSURERS' INSOLVENCY FUND.**

No. 95–114–Appeal.

Supreme Court of Rhode Island.

Feb. 21, 1997.

John Coughlin, Providence, for Plaintiff.

Bruce J. Balon, Joseph C. Tanski, Joseph Marrow, Providence, for Defendant.

## OPINION

PER CURIAM.

At issue in this case is whether the Rhode Island Insurers' Insolvency Fund (insolvency fund or fund) is obligated to pay underinsured-motorist benefits in excess of an insured's stated policy limits for such coverage in the event the insolvent carrier failed to comply with the provisions of G.L.1956 § 27–7–2.1(A), as amended by P.L.1987, chs. 380, 435, § 1. Those provisions require an insurer to notify the policyholder of the availability of uninsured motorist coverage in an amount equal to the bodily-injury liability coverage on the vehicle. Because this Court is evenly divided on the issue, the decision of the Superior Court finding that the insolvency fund is so obligated is thereby affirmed.

### Facts and Procedural History

The parties have stipulated to the following facts. On December 10, 1987, plaintiff, Lee Falco, while riding as a passenger in her husband's car, was injured in an automobile accident. The driver of the other vehicle, Gerald Fontaine, maintained a liability policy in the amount of $50,000 with National Grange Insurance Company (National Grange). National Grange paid the $50,000 policy limit to plaintiff.

John Falco, plaintiff's husband, had an automobile insurance policy with American Universal Insurance Company (American Universal) that provided single-limit bodily-injury liability coverage in the amount of $300,000 per accident and uninsured/underinsured motorist coverage in the amount of $50,000 per accident. The policy was renewed on November 7, 1987, one month before the accident. It is undisputed that American Universal, through its agent, failed to advise plaintiff's husband of the availability of uninsured/underinsured-motorist coverage in an amount equal to the bodily-injury liability limit, as required by § 27–7–2.1(A). American Universal, however, went into receivership, and its claims were taken over by the insolvency fund pursuant to G.L.1956 chapter 34 of title 27. The plaintiff's claim for underinsured-motorist benefits was submitted to an arbitration panel, and on January 24, 1994, the panel awarded plaintiff $95,000, in addition to the $50,000 paid by National Grange. The insolvency fund paid plaintiff $50,000, the stated policy limit of her husband's uninsured/underinsured-motorist coverage but disputed any liability for amounts in excess of that limit.

The plaintiff filed a motion for declaratory judgment in Superior Court, seeking a declaration that the uninsured/underinsured-motorist coverage under the policy was equal to the liability coverage ($300,000) and that the insolvency fund was therefore obligated to pay her the remaining $45,000 granted by the arbitration award. On February 2, 1995, the trial justice granted plaintiff's motion and ruled that the fund was obligated to pay the remaining $45,000. The insolvency fund appealed to this Court.

### Applicable Statutes

The issue presented by this case is whether the insolvency fund is obligated to pay underinsured-motorist benefits in excess of a claimant's stated policy limit for uninsured/underinsured-motorist coverage if the insolvent insurer failed to comply with the notification requirements of § 27–7–2.1(A). The applicable version of the statute provides:

"No policy * * * shall be delivered * * * with respect to any motor vehicle * * * unless coverage is provided * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * provided, however, that the insurer shall make uninsured motorist coverage available in an amount equal to the insured's bodily injury liability limits at the request of the named insured, and provided further, however, that the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limit set forth in § 31–31–7."

The provision of § 27–7–2.1(A) which the parties agreed was violated by American Universal went on to say in pertinent part:

"After the selection of limits by the named insured * * * the insurer * * * shall be required to notify the policy holder in any renewal * * * as to the availability of such coverage or optional limits."

The Rhode Island Insurers' Insolvency Fund was established

"to provide a mechanism for the payment of *covered claims* under certain insurance policies[,] to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to create an entity to assess the cost of the protection and distribute it equitably among member insurers." G.L.1956 § 27–34–2. . (Emphasis added.)

Section 27–34–5(8) in pertinent part defines a covered claim as "an unpaid claim * * * submitted by a claimant, which arises out of and is within the coverage and subject to the *applicable limits* of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer on or after July 1, 1988." (Emphasis added.)

The plaintiff argued that American Universal's failure to comply with its statutory duty to notify a policyholder of uninsured-motorist coverage under § 27–7–2.1(A) automatically triggered an increase in that coverage up to the level of bodily-injury liability coverage, namely, $300,000. Therefore, according to plaintiff, because her claim of $95,000 lies within the policy's applicable limits and because the claim represents one covered under the policy, the fund is obligated to pay up to the $300,000 policy limit.

The insolvency fund, on the other hand, argued that it is prohibited by statute from paying benefits in excess of the stated policy limit, in this case $50,000, for uninsured/underinsured-motorist coverage notwithstanding American Universal's failure to comply with its notification duties. The fund maintained that the Legislature clearly intended to restrict the fund's liability to the limits expressly stated in a policy, in this case, to $50,000 in uninsured-motorist coverage. Under § 27–34–8(a)(1)(iii), the fund is responsible for paying only "the obligation of the insolvent insurer under the policy or coverage from which the claim arises."

Two justices found compelling the explicit legislative imperative of the Rhode Island Insurers' Insolvency Fund Act (act), G.L. 1956 chapter 34 of title 27, which directed that the act "shall be liberally construed" to effectuate its purposes. Section 27–34–4. In particular, one of the stated purposes of the act is "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." Section 27–34–2. These justices were further persuaded by our prior cases that have construed the legislative purposes of the uninsured-motorist statute to be the protection of "those who have attempted to protect the public interest and themselves by purchasing insurance" and by the statute's primary objective of "indemnification for an insured's loss rather than defeat of his or her claim." *DiTata v. Aetna Casualty and Surety Co.,* 542 A.2d 245, 247 (R.I.1988).

On the other hand, two justices reasoned that the insolvency fund is only liable for a *covered* claim and that such a claim would not include one that is enhanced by improper conduct of the insolvent insurer. These justices accepted that the plaintiff may have a claim against American Universal, or the receiver of American Universal, based on American Universal's alleged negligence, for the full amount of the bodily-injury liability limit. Any claim that the plaintiff might have against American Universal because of the lack of notification, however, was not valid against the fund because the insurer's negligence could not be imputed to the fund. Under such a rationale, *Aetna Casualty & Surety Co. v. St. Angelo,* 615 A.2d 1018 (R.I. 1992), is not controlling because that case penalized the insurer for failure to fulfill its statutory obligation to notify its insured of available coverage, thus producing a penal, not a contractual, result.

Consequently, because this Court is evenly divided on the issue, the decision of the Superior Court is affirmed, and the papers may be returned to the Superior Court.