Filed 12/17/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case Nos. 22-CV-2256/2270

| | |
|---|---|
| MAXWELL'S PHARMACY, INC., <br>     Plaintiff <br><br> v. <br><br> MMG INSURANCE COMPANY, <br>     Defendant | DECISION ON MOTION |

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING SUBROGATION AND THE "MADE WHOLE" DOCTRINE

This action arises from a March 2020 fire that caused damage to Plaintiff Maxwell's Pharmacy, Inc. (dba Lakeside Pharmacy). Plaintiff now seeks summary judgment on its declaratory judgment claim against its insurer, MMG Insurance Company, regarding subrogation. Plaintiff Maxwell's is represented by Attorney Russell D. Barr, Esq. and Defendant MMG is represented by Attorney Susan J. Flynn, Esq. For the reasons discussed below, the motion for summary judgment is granted.

### Background and Undisputed Facts

Maxwell's suffered damages in March 2020 from a fire in a neighboring property. It subsequently sued the business at that neighboring property (Pearl Street Beverage), the property owner (Lakeside Pharmacy Holdings), and its insurer (MMG). In its original complaint, Maxwell's alleged negligence against both Pearl Street Beverage and Lakeside Pharmacy Holdings, and claims for breach of contract and bad faith against MMG. The property owner also brought a counterclaim against Maxwell's related to certain financial obligations under its lease agreement. The insurer commenced a separate subrogation action against Pearl Street Beverage (22-CV-2270). The pertinent subrogation provision in the insurance contract between Maxwell's and MMG provides:

> If any person or organization to or for whom we make payment
> under this policy has right to recover damages from another, those
> rights are transferred to us to the extent of our payment. That
> person or organization must do everything necessary to secure our
> rights and must do nothing after loss to impair them.

Pl.'s Ex. 2 (p. 58 of PDF, under heading "Transfer Of Rights Of Recovery Against Others To Us").

In July 2024, the parties partially settled their dispute. According to the settlement agreement, the property owner's insurer (also MMG) paid Maxwell $25,000, and Pearl Street Beverage's insurer, Acadia Insurance Company, deposited its full policy limit of $1 million into an escrow account. In return, Maxwell's dismissed its negligence claims against Pearl Street Beverage and the property owner, and the property owner agreed to drop its counterclaim against Maxwell's. Additionally, MMG agreed to dismiss its subrogation claim against Pearl Street Beverage in case number 25-CV-2270, and "to continue litigating its subrogation claim directly with Maxwell's." Settlement Agreement at 1 (Pl.'s Ex. 1) (filed Sept. 25, 2025).[1] With respect to the escrow funds, the agreement provides:

> Maxwell and MMG will continue subrogation litigation with respect to the $1,000,000 being held in escrow. Ultimately, to determine whether MMG can take any portion of such $1,000,000 in subrogation considering the amount of Maxwell's total damages;
>
> . . .
>
> Maxwell preserves any and all claims and defenses as to MMG's subrogation claims including, without limitation, all uninsured loss claims and damages beyond the period specified in its insurance contract with MMG.
> . . .
>
> Maxwell and MMG agree to first submit their first-party insurance contract claims at trial including Maxwell's uninsured loss damages specified . . . above. At the conclusion of such trial, Maxwell and MMG agree to submit their subrogation arguments (i.e. their equitable distribution of the $1,000,000 policy arguments) to the trial judge to ultimately decide on the distribution of the $1,000,000 contemplated . . . above.

*Id*. ¶ 5. Thus, "per the Settlement, the parties anticipate submitting both Maxwell's breach of contract-based damages/losses and Maxwell's damages/losses that occurred outside the contractual policy limits and term to the jury at trial." Pl.'s Stmt. of Facts ¶ 5. According to the parties, after "receiving the jury's determination of Maxwell's total, non-contractual, uncompensated losses, Maxwell and MMG would then present their competing arguments for who should receive the escrowed PSB Funds to the trial judge." *Id*. ¶ 6.

In May 2025, Maxwell's amended its complaint to add a declaratory judgment claim. That claim seeks a declaration "that Vermont applies the common law Made Whole Doctrine and that the Insurance Contract does not modify or abrogate the Made Whole Doctrine." Am. Compl. ¶ 85. Maxwell's now seeks summary judgment on that claim.

---

[1] Pursuant to the Settlement Agreement, and by Order of the Court on October 23, 2024 in Case No. 22-CV-2270, that case was consolidated with this matter for purposes of further litigation.

Discussion

"[I]t is widely held that in the absence of contrary statutory law or valid contractual obligations to the contrary, the general rule under the doctrine of equitable subrogation is that when an insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights." 16 Couch on Ins. § 223:134 (footnotes omitted). This rule also applies "to instances in which the insured has recovered from the third party and the insurer attempts to exercise its subrogation right by way of reimbursement against the insured's recovery." *Id*. The purpose of this "made whole" rule is that "the burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured, who is the least able to shoulder the loss." *Id*. § 223:136.

Vermont appears to have adopted this general rule: "The right of a party secondarily liable to be subrogated does not attach unless all the principal obligations are discharged." *Vermont Indus. Dev. Auth. v. Setze*, 157 Vt. 427, 434, 600 A.2d 302, 307 (1991) (quoting *Walker Process Equip. Co. v. Cooley Bldg. Corp.,* 129 Vt. 333, 340, 278 A.2d 714, 718 (1971)). While MMG complains that *Setze* did not literally use the language "made whole," the quoted sentence in fact defines the "made whole" doctrine. Moreover, in further support of that proposition, the *Setze* Court also cited an Alabama case that describes the "made whole" doctrine. *See Int'l Underwriters/Brokers, Inc. v. Liao*, 548 So. 2d 163, 164 (Ala. 1989) ("[C]ourts have generally held that no right of subrogation exists until the insured has recovered an amount in excess of his or her loss."); *see also Lombardi v. Merchants Mut. Ins. Co.*, 429 A.2d 1290, 1291-92 (R.I. 1981) (same) (also cited in *Setze*).

There are "two special circumstances" where "a party secondarily liable may be subrogated even though the principal creditor has not recovered in full." *Setze*, 157 Vt. at 435, 600 A.2d at 307. These two exceptions are: "(a) where the principal creditor does not object to subrogation, and (b) where a contract specifically provides that the party secondarily liable will be allowed to subrogate to the extent he or she reimburses the creditor." *Id*. Maxwell's requests a declaratory judgment that the language of the insurance contract here does not modify or abrogate the "made whole" doctrine.

The Court agrees with Maxwell's that the contractual language does not explicitly provide that MMG is entitled to subrogation regardless of whether Maxwell's has fully recovered its losses. Rather, it includes essentially a boilerplate subrogation clause:

> If any person or organization to or for whom we make payment
> under this policy has right to recover damages from another, those
> rights are transferred to us to the extent of our payment. That
> person or organization must do everything necessary to secure our
> rights and must do nothing after loss to impair them.

Pl.'s Ex. 2 (p. 58 of PDF). "[A]n insurance contract providing generally that the insurer is subrogated to the rights of the insured does not itself permit an insurer to recover from a third-

party tortfeasor until the insured has been made whole by the combination of insurance payments and the amount recovered from the tortfeasor, and there must be specific language to the contrary to avoid the make whole rule." 16 Couch on Ins. § 223:145. There is no such specific language to avoid the "made whole" rule here.

Thus, while Maxwell's is entitled to summary judgment on its declaratory judgment claim, it is not clear that this will have any significant effect at this stage of the litigation. Obviously, Maxwell's and MMG do not agree as to the extent of Maxwell's damages and whether Maxwell's has been fully compensated for its losses. "The factors considered in determining whether an insured has been made whole depend on the circumstances of a particular case[,] . . . [including] the ability of parties to prove liability, the comparative fault of all the parties involved in the accident, the complexity of legal . . . issues, . . . the nature of the injuries, and the assets or lack of assets available above and beyond the insurance policy." 16 Couch on Ins. § 223:152. It will be up to the jury and/or the Court to determine both the amount of damages and whether Maxwell's has been "made whole" for purposes of resolving the subrogation claim. *See generally* 16 Couch on Ins. §§ 223:149-50; *see also id*. § 223:161 ("[A] jury verdict constitutes full recovery for purposes of determining whether an insurer is entitled to subrogation.").

<u>Order</u>

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment on its declaratory judgment claim (Mot. # 20) is GRANTED. Having considered Defendant MMG's sur-reply in deciding the summary judgment motion, the Court also GRANTS Defendant's motion to file a sur-reply (Mot. # 22).

Electronically signed on December 17, 2025 at 3:08 PM pursuant to V.R.E.F. 9(d).

Megan J. Shafritz
Superior Court Judge

4